IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:22-CR-68-TAV-JEM |
| | ) | |
| YAZAN ARAFAT ABDUL-LATIF, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned on Defendant Yazan Abdul-Latif's Renewed Motion to Exclude All Evidence Not Yet Turned Over by Deadline or Alternatively to Compel Turnover of THSCRN Method Validation Data [Doc. 526]. *See* 28 U.S.C. § 636(b). Defendant Abdul-Latif is charged with conspiring to distribute marijuana and to launder the proceeds and possession of a firearm in furtherance of drug trafficking [Doc. 146]. Law enforcement seized two hundred pounds of suspected marijuana during the execution of a search warrant at Defendant's residence [Doc. 358 p. 17]. The parties appeared on July 2, 2024, for a motion hearing (the "*Daubert* hearing") on Defendant's motion to exclude testimony and test results of the Government's chemist who identified the substance seized from Defendant's residence as illegal marijuana. Immediately before the hearing, Defendant moved to exclude a fifty-three-page method validation report, which the Government produced to defense counsel the afternoon before the hearing [Docs. 521 & 521-1]. The Court denied Defendant's motion but gave defense counsel and Defendant's expert time to review the report during the hearing. Defendant now renews his motion, asking the Court either to exclude the report or, alternatively, to compel the Government to produce

the data underlying the report and reopen the *Daubert* hearing for additional argument relating to the report and data [Doc. 526 p. 1].

Defendant argues that the Government's method validation report should be excluded from evidence presented at the *Daubert* hearing because (1) the Government failed to disclose the report by or before March 27, 2024, when it stated that it had disclosed all evidence responsive to Defendant's discovery requests, (2) it produced the report too late for defense counsel's or Defendant's expert's review prior to the *Daubert* hearing, and (3) it continues to refuse to produce the underlying method validation data [Doc. 526 pp. 1–3]. Alternatively, Defendant asks the Court to reopen the *Daubert* hearing and to compel the Government to turn over the method validation data, asserting that the data is essential to the Court's ruling on the *Daubert* issue [*Id*. at 1, 3–4; Doc. 545 pp. 1–2]. The Government responds in opposition, contending (1) exclusion is not the remedy for late disclosure, (2) both the validation report and the underlying data are outside the scope of discovery, and (3) the data underlying the validation report is not material to Defendant's defense or necessary for the Court's determination of the admissibility of the Government's expert [Doc. 539 p. 1].

After careful review of the parties' filings and the relevant law, the undersigned concludes that Rule 16 of the Federal Rules of Criminal Procedure does not compel disclosure of the validation report and supporting data. Additionally, Defendant was not prejudiced by the timing of the disclosure of the validation report. Accordingly, Defendant's motion to exclude the validation report or alternatively to compel disclosure of the validation data is **DENIED**. Defendant, however, is permitted to file a limited post-hearing brief summarizing his argument on the validation report's impact on the reliability of the test conducted by the Government's expert.

I.  BACKGROUND

Defendant first appeared in this Court on October 5, 2022 [Doc. 116].[1] On January 17, 2024, following protracted litigation of pretrial motions and less than seven weeks before the then March 5, 2024 trial date, Defendant moved to compel "discovery of the method used to conclude that the substances tested met the legal definition of marijuana as opposed to lawful cannabis" [Doc. 427 p. 1]. Specifically, Defendant sought to discover the laboratory file "showing [the laboratory's] methods and the validation of those methods" as described in the attached affidavit of Defendant's expert Dr. E. Howard Taylor [*Id.* at 3].[2] Defendant said informal attempts to obtain the requested information from the Government were unsuccessful [*Id.* at 1].

The Government responded that the DEA Nashville Sub-Regional Laboratory ("the Nashville DEA laboratory") performed all controlled substance testing in this case [Doc. 447 p. 1 n.1]. It stated that it had previously disclosed all the requested information, some of which is publicly available on the DEA's website, except for the "validation report and data for the THCSCRN method," which it disclosed to Defendant on January 29, 2024 [*Id.* at 1–2]. According to the Government, it disclosed the DEA's Chemical Analysis Reports on the seized substance from this case on July 14, 17, and 20, 2023, and these reports included "a summary of Senior

---

[1]   Defendant appeared in the District of Colorado on August 23, 2024 [Doc. 105-1 p. 2]. That court detained Defendant [Doc.105 pp. 24–27] and committed him to this district [*Id.* at 23].

[2]   In his affidavit, Dr. Taylor, who is a forensic toxicologist and federal laboratory inspector, stated the discovery he had reviewed thus far was "insufficient for [him] to evaluate the accuracy of the result and the method of testing" used in this case [Doc. 427-1 p. 2]. Dr. Taylor requested the "Laboratory Litigation Package," which contains the data underlying the tests performed as well as the data for calibration, the quality control samples, and the chain of custody [*Id.* at 2]. He also requested the testing laboratory's standard operating procedures and "validation data," which "is a standard set of data performed in all forensic toxicology laboratories for each method to include: bias and precision, calibration model, carryover, interference studies, Ionization Suppression/Enhancement (if done by Liquid Chromatography-Mass Spectrometry), Limit of Detection (LOD), [and] Lower Limit of Quantitation (LOQ)" [*Id.* at 3].

3

Forensic Chemist Alan Randa's expert testimony opinion pursuant to Fed. R. Crim. P. 16(a)(1)(G) and cited Defendant to the DEA.gov website for publicly available documents regarding instrumental methods and other information" [*Id*. at 1–2]. In July and early August 2023, and pursuant to Defendant's informal request, the Government also "disclosed the case notes from the DEA laboratory, the DEA chain of custody reports, balance calibration checks, the instrument check logs, the Randa Proficiency Memo and several other documents Defendant requested from the lab" [*Id*. at 2]. Thus, the Government asked the Court to deny Defendant's motion to compel because it has complied with its discovery obligations [*Id*. at 2–3].

In reply, Defendant argued that the Government had not provided "method validation study results" [Doc. 464 p. 9, 12]. He also moved the Court to exclude "the opinion of the DEA chemist as to the identity of the substance tested" because the Government has failed to demonstrate the testing methods used by the Nashville DEA laboratory are valid, meaning that the test used to identify the cannabis was suitable for its intended purpose [*Id*. at 4, 14]. In this regard, Defendant argued that the test employed by the Nashville DEA laboratory did not quantify the amount of Delta 9 THC in the samples and applied heat that converted Delta 8 THC into Delta 9 THC [*Id*. at 12–13].

In responding to Defendant's new motion to exclude the testimony of Mr. Randa, the Government again affirmed that it had provided all documents responsive to Defendant's discovery requests and, following Defendant's reply, "disclosed additional requested documents including information which the United States believes to be irrelevant to the issues before the Court regarding the [Nashville] DEA lab[oratory]'s testing of Delta 8" [Doc. 484 p. 1]. The Government asserted that based upon the letter from Dr. Taylor submitted in support of

4

Case 3:22-cr-00068-TAV-JEM   Document 549   Filed 09/12/24   Page 4 of 16   PageID #: 3456

Defendant's motion, it doubts that "Defendant has provided his expert with all of the documents provided by the United States" [*Id*. at 3].

The parties appeared before the undersigned on March 27, 2024, for a motion hearing on Defendant's motions to compel discovery and to exclude the testimony of DEA Chemist Randa. Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Government. Attorney Norman Silverman represented Defendant Abdul-Latif, who was also present. At this hearing, Mr. Silverman acknowledged the Government's position that it had provided all information in its possession on the testing of the suspected controlled substances in this case and agreed that in light of the Government's representation, his motion to compel discovery was moot [Doc. 499 p. 1]. The Court reset the *Daubert* hearing to July 2, 2024, to allow disclosure of all experts on the testing of controlled substances and consideration of all challenges to these experts in a single hearing [*Id*. at 2]. The Court set deadlines for disclosure of experts, filing of all *Daubert* motions, and further briefing, stating that these "deadlines and hearing date will not be modified or extended absent extraordinary circumstances" [*Id*. at 3].

On April 26, 2024, Defendant disclosed Dr. Taylor as his expert witness at trial and in any pretrial hearings [Doc. 510 p. 1]. Defendant attached Dr. Taylor's April 24, 2024 expert report [Doc. 510-1] and referred the Court to Dr. Taylor's prior reports previously filed in the record [Docs. 402, 427-1, and 464-2]. On May 24, 2024, Defendant again moved to exclude the testimony of Mr. Randa along with "(1) all alleged marijuana; [and] (2) all testimony, documents, or any other evidence directly or indirectly identifying, referring or alluding to marijuana" [Doc. 512 pp. 1–2]. Defendant identified eight "deficiencies" in Mr. Randa's testing methods and procedures, including that "no evidence of method validation has been provided" [*Id*. at 2–3 (capitalization removed)]. The Government responded in opposition on June 7, 2024 [Doc. 513]. With respect to

5

the validation claim, the Government stated that "[t]he THCSCRN method was validated per DEA policy" [*Id.* at 3]. Defendant filed a reply on June 14, 2024, stating that Mr. Randa's conclusory statement that the test he used is valid is insufficient to demonstrate the validity of the DEA testing methods and that "[t]o date Chemist Randa has failed to provide data demonstrating the reliability of the THCSCRN testing method" [Doc. 516 pp. 1–2].

Mr. Silverman proffered that the Government emailed a copy of a method validation report to his office after 4:30 p.m., on July 1, 2024, the day before the *Daubert* hearing [Doc. 521 p. 1; Doc. 526 p. 2]. Defendant then moved to exclude the report, filing his motion fifteen minutes before the *Daubert* hearing was to begin [Docs. 520 & 521 (amended motion attaching a copy of the method validation report)]. Defendant argued that he was prejudiced by the late disclosure because his expert had already prepared for the *Daubert* hearing with the understanding that the Government had produced all the evidence related to testing [Doc. 521 p. 2]. He asserted that exclusion of the report is the only fair remedy because a continuance of the *Daubert* hearing, to allow Dr. Taylor to review the late disclosure, would result in extra costs to Defendant [*Id.*].

At the July 2, 2024 hearing, the Court first addressed Defendant's motion to exclude the validation report [Doc. 542, Transcript, pp. 4–18]. AUSA Davidson argued that the validation report, which is from the "master DEA lab" in Virginia, is proprietary work product and is not discoverable under Rule 16 [*Id.* at 7]. She asserted that she was previously informed by Jacqueline Brown, the program manager for the DEA Forensic Science Laboratory Management and Operations section and legal counsel for the DEA laboratories, that the Government had disclosed all information responsive to Defendant's and Dr. Taylor's request and this is what she previously represented to the Court [*Id.* at 7–8]. AUSA Davidson stated that consistent with her practice in this case, she sent Defendant's most recent filing to Mr. Randa and Ms. Brown, and Ms. Brown

6

emailed the Quantitative Separation Method Validation Final Report dated May 9, 2019 (the "master validation report") in response on July 1, 2024, at 8:20 a.m. [*Id*. at 8; Exh. 1 (copy of email)]. AUSA Davidson stated that she then voluntarily disclosed the report to defense counsel later that day [*Id*.]. She planned to question Mr. Randa only on the existence of the master validation report, not on its contents [*Id*. at 8, 12–13]. Defendant objected to any testimony on the report [*Id*. at 6–7, 11, 18].

The Court overruled Defendant's objection and denied his motion to exclude the master validation report [*Id*. at 17–18]. The Court, however, permitted a recess at the conclusion of Mr. Randa's testimony and before Dr. Taylor's testimony for Dr. Taylor to review the validation report [*Id*. at 18]. Defendant questioned Dr. Taylor about the master validation report [*Id*. at 118–122, 126–127]. Additionally, the Government recalled Mr. Randa in rebuttal, and defense counsel questioned Mr. Randa on the DEA's procedure for method validation [*Id*. at 158]. Mr. Randa testified that the Special Testing and Research Laboratory in Virginia, not the Nashville DEA laboratory, validates the methods and testing used at the DEA laboratories [*Id*.]. He stated that "[o]nce a method has been okayed, then approved, it is then sent out to the rest of the DEA laboratories where they run a mini validation or a method verification to show that that set of parameters on that instrument will provide a similar result as what was done in the method validation" [*Id*.].

On July 7, 2024, Defendant moved the Court to reconsider its admission of the Government's master validation report [Doc. 526].[3] The Government responded in opposition on

---

[3] Also, on July 7, 2024, Defendant moved to continue the trial and plea deadline in this case to allow for determination of his motion to exclude the master validation report, stating that the Government, as stated at the *Daubert* hearing, is not opposed to the requested continuance [Doc. 527 pp. 1–2, 4]. The undersigned continued the trial to December 3, 2024, and set a new plea deadline of November 1, 2024 [Doc. 537 p. 3].

7

July 24, 2024 [Doc. 539]. Defendant filed a reply on August 12, 2024 [Doc. 545]. Following receipt of the filings, the undersigned took the matter under advisement, and it is now ripe for adjudication.

## II.     CONTENTS OF MASTER VALIDATION REPORT

The master validation report appears in the record as an attachment to Defendant's initial amended motion to exclude [Doc. 526-1]. It is entitled the Office of Forensic Sciences Qualitative Separation Method Validation Final Report – SFL1 and dated May 9, 2019 [*Id*. at 1]. The report reviews the "THCSCRN method," which "is a limited purpose method for the separation of cannabinoids" using a gas chromatography-mass spectrometry (GC-MS) instrument (the "DEA 741858 instrument") at the Special Testing and Research Laboratory in Dulles, Virginia [*Id*.]. The report concludes that the THCSCRN separation method performed on the DEA 741858 instrument is "suitable for its intended purpose" of "assessing whether the concentration of [Delta-9 THC] is below or above 1% (w/w)" [*Id*.]. The nineteen-page report summarizes the data from solution preparation and validation results in a series of charts [*Id*. at 2–18]. The copy of the report provided to Defendant does not contain the supplemental validation data, which the report states is contained in Appendix A [*Id*. at 18].

Three appendices are attached to the master validation report [*Id*. at 20–53]. Appendix A-1 is a fifteen-page report dated January 17, 2020, and signed on January 27, 2020, and is a "supplemental report present[ing] a summary of the ruggedness evaluation completed for the THCSCRN method after its transfer to the DEA regional laboratories" [*Id*. at 20]. "For the purpose of this report, ruggedness refers to the general performance of this method across different laboratories, instruments, operators, and under variable environmental conditions" [*Id*.]. Appendix A-1 summarizes the results from testing of the THCSCRN method at seven regional DEA

8

laboratories[4] (plus the Virginia DEA laboratory) on eighteen GC-MS instruments and "demonstrate[s] the validity and reliability of the THCSCRN method across DEA laboratories" [*Id.*]. The link to "[t]he Ruggedness Data Analysis Summary spreadsheet and the validation data collected throughout the field laboratories" is redacted [*Id.* at 34].

Appendix A-2, an eight-page report dated October 22, 2019, and signed December 9, 2019, is the "[f]inal report for the evaluation of testosterone as an alternative internal standard (IS) for use with the THCSCRN method" [*Id.* at 35]. The previous tests of the THCSCRN method used a solution containing androstene as the IS, but the report states that "availability of this compound may be limited in the future due to the costs associated with high-purity materials" [*Id.*]. Appendix A-2 summarizes "the evaluation of testosterone as an alternative IS" [*Id.*] The report concludes that the "data and results presented in this report demonstrate that testosterone is suitable as an alternative internal standard for the THCSCRN method" [*Id.* at 42]. The link to "[a]ll the data compiled during this evaluation" is redacted [*Id.*].

Appendix A-3, an eleven-page report dated March 15, 2021, and signed on April 21, 2021, "summarizes a re-evaluation of the THCSCRN method data collected during the original validation performed during the spring of 2019," examining the "peak area ratios" as compared to the "peak height ratios evaluated during the original validation" [*Id.* at 43]. This report concludes that analyzing peak height is preferable to peak area because it is more efficient, is "less affected by closely eluting compounds," and can indicate "early signs of instrument degradation" alerting the operator to the need for maintenance on the instrument [*Id.* at 52–53]. The link to "[a]ll the data compiled during this evaluation" is redacted [*Id.* at 53].

---

[4] The Court infers that the Nashville DEA laboratory was not one of the laboratories performing this testing. At the *Daubert* hearing, Mr. Randa testified that the Nashville DEA laboratory is a subregional laboratory and is under the DEA's regional or field laboratory in Largo, Maryland [Doc. 542 pp. 24–25].

9

### III.     ANALYSIS

Defendant asks the Court to exclude the master validation report by the DEA Special Testing and Research Laboratory, arguing that the Government failed to disclose this report in March 2024 or in time for its use at the July 2 *Daubert* hearing [Doc. 526 pp. 1–3]. He contends that he was prejudiced by the Government's late production of the report on the eve of the July 2 hearing because Dr. Taylor analyzed incomplete data when forming an opinion on the propriety of the DEA's testing method [*Id*. at 4]. Moreover, he asserts that because the Government continues to withhold the method validation data, Dr. Taylor cannot independently ascertain the validity of the DEA's testing method [*Id*. at 4–5]. Defendant asserts that production of the underlying data is necessary to the Court's resolution of whether the test used by the Government's expert is reliable [*Id*. at 5; Doc. 545 pp. 1–2].

For the reasons discussed below, the Government was not required to disclose the master validation report, which is not part of Senior Chemist Randa's determination that the substance in this case is marijuana. Nor was Defendant prejudiced by the timing of the disclosure. The Court declines to compel the Government to turn over the complete data that is summarized in the master validation report and appendices.

### A.     Disclosure

If the government intends to present expert testimony at trial, it must disclose to the opposing party in writing: "a complete statement of all opinions the government will elicit from the witness . . .", "the basis and reasons for [the witness's opinions to be elicited,]" and the witness's qualifications to include a list of all publications by the witness in the last ten years and a list of cases in which the witness has testified as an expert in the last four years. Fed. R. Crim. P. 16(g)(1)(i) & (iii). Here, Mr. Randa did not create the master validation report.

Nor was it a part of the basis for his opinion that the substances seized from Defendant's residence are marijuana. Rule 16(g) requires a summary of the expert's testimony, not production of ancillary documents. *See United States v. Curtis*, 755 A.2d 1011, 1016 (D.C. Ct. App. 2000) (determining that Rule 16's requirement that the government disclose a summary of its expert's testimony does not require production of "materials relating to the maintenance of the instruments or the protocols and training materials used by the laboratory").

Instead, the master validation report was produced by a DEA laboratory as a part of the DEA's internal process of determining the reliability of a specific test for marijuana. Except for the "results or reports" of scientific tests or experiments, the government's internal reports and documents are not subject to disclosure. Fed. R. Crim. P. 16(a)(1)(F) & (2). Several of our sister circuits have held that "discovery relating to laboratory processes" is not discoverable under Rule 16(1)(D), requiring disclosure of "reports and tests." *United States v. Price*, 75 F.3d 1440, 1445 (10th Cir. 1996) (finding no violation of Rule 16 where government disclosed all laboratory reports and test results for the testing of methamphetamine); *see also United States v. Iglesias*, 881 F.2d 1519, 1524–25 (9th Cir. 1989) (holding government is not required to turn over its chemists' "log notes" or protocols under Rule 16(1)(D), because they were internal documents); *United States v. Orzechowski*, 547 F.2d 978, 984–85 (7th Cir. 1977) (determining that Rule 16 did not require production of internal DEA materials on the tests permitting identification of cocaine isomers). *But see United States v. Yee*, 129 F.R.D. 629, 635 (N.D. Ohio 1990) (exercising its discretion to require government to disclose "predicate materials" relied upon by its experts in support of DNA evidence to permit defendant to prepare for lengthy pretrial hearing on admissibility of novel scientific evidence).

11

Defendant replies that whether the report and data are discoverable under Rule 16 is not at issue here [Doc. 545 p. 2]. He maintains that the report and the data are necessary for the Court to determine that the opinions of the Government's expert were derived from a valid testing method [*Id*. at 1]. Defendant, however, fails to cite any law or rule requiring the Government to disclose the master validation report. Nevertheless, the Government has voluntarily disclosed the report. The question becomes whether the timing of the disclosure requires its exclusion.

B. Timing

Defendant asserts that he has been asking for the validation methodology for the test used by the Government's expert since August 2023, and the Government did not produce the master validation report until less than thirty minutes before the close of business on the day before the *Daubert* hearing [Doc. 526 pp. 1–2]. He contends that he was prejudiced by the Government's late production of the report on the eve of the July 2 hearing because he has spent more than $20,000 on his expert only to have his expert's opinion compromised by the Government's late disclosure of the validation report [*Id*.]. The Government counters that exclusion is inappropriate because it disclosed the report promptly upon receiving it and in sufficient time for Defendant to inspect and use it at trial [Doc. 539 pp. 9–10].

Generally, delayed production of even exculpatory evidence is not prejudicial if produced in time for effective use at trial. *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988). Here, Defendant received the master validation report in time to use it at the July 2 *Daubert* hearing. The Government represented that it had produced all information in its possession responsive to Defendant's request for a validation report by the March 27, 2024 hearing. This disclosure included the validation report specific to the Nashville DEA laboratory, where the substances seized from Defendant's home were tested. Although the Government was on notice

12

from Defendant's subsequent *Daubert* motion and reply that Defendant still believed the validation information to be outstanding, AUSA Davidson was not aware of the master validation report until July 1, 2024. She disclosed it to defense counsel on the same day she received it. The Court gave defense counsel and Defendant's expert time to review the master validation report during the July 2 hearing. Defense counsel questioned both Dr. Taylor and Mr. Randa about the master validation report during the hearing. Accordingly, Defendant was not prejudiced by the timing of the disclosure of the master validation report, and the timing of the disclosure is not a basis for its exclusion.

Although the Court finds exclusion of the report is not required, the undersigned will give Defendant ten days to file a limited post-hearing brief on the impact of the master validation report on his argument that the test employed by Dr. Randa to identify the substance in this case was not reliable. In this regard, the undersigned observes that Dr. Taylor has reviewed the master validation report and produced a report to defense counsel [*See* Doc. 526-3]. Moreover, Defendant has already marshaled several arguments about the significance of the master validation report [*See* Doc. 545 pp. 4–8].

### C. Data

If the master validation report is not excluded, Defendant asks the Court to compel the Government to produce the complete data underlying the report to allow his expert to test the report's conclusions [Doc. 526 p. 5; *see also* Doc. 545 p. 2 (arguing the data is necessary for the Court to determine whether it supports the expert's conclusions)]. He cites to three points in the master validation report where the Government has redacted a link to additional data [Doc. 526 p. 3; Doc. 526-1 pp. 2–3]. The Government responds that the report includes the data upon which

it relies [Doc. 539 p. 5].[5] It objects to the provision of additional, proprietary information, which Rule 16 does not require [*Id*. at 6].

Again, Defendant provides no authority for compelling the Government to turn over additional underlying data. Instead, he refers the Court to cases holding that a court may exclude expert testimony when a party fails to show the reliability of its expert's opinion [Doc. 545 pp. 3–4]. These cases properly state that the party offering the expert is required to show that the expert's methodology is reliable. *United States v. Semrau*, 693 F.3d 510, 520 (6th Cir. 2012); *United States v. Nacchio*, 555 F.3d 1234, 1241–44 (10th Cir. 2009). Such "[r]eliability questions may concern the expert's data, method, or his application of the method to the data." *Nacchio*, 555 F.3d at 1241 (citations omitted); *see also Semrau*, 693 F.3d at 520 (affirming exclusion of expert testimony on fMRI testing as indicative of defendant's truthfulness because "the technology had not been fully examined in 'real world' settings and the testing administered to [defendant] was not consistent with tests done in research studies"). These opinions, however, do not state that the offering party must disclose all underlying data. *Semrau*, 693 F.3d at 520 ("There is 'no definitive checklist or test' for balancing the liberal admissibility standards for relevant evidence and the need to exclude misleading 'junk science.'" (quoting *Best v. Lowe's Home Cntrs.*, 563 F.3d 171, 176 (6th Cir. 2009)). Nor is this a case in which the Government has withheld the data from Mr. Randa's testing of the seized substances or even all the data relevant to the master validation report.

---

[5] The Government states that the validation report "include[s] the supporting data as well as supplemental validation data within Appendix A" [Doc. 539 p. 5]. The Court finds that the master validation report summarizes the data in Appendix A, but as discussed in part II. above, Appendix A is not included in the copy of the report provided to Defendant. Instead, the validation report and the three appendices summarize the data from testing.

14

Moreover, Defendant fails to demonstrate a need for the complete underlying data. Defendant presented Dr. Taylor's evaluation of the master validation report as an attachment to his motion to exclude [Doc. 526-3]. While Dr. Taylor criticizes the absence of the underlying data, which he contends is necessary "to evaluate the veracity of the laboratory's claims" [*Id*. at 5], he primarily characterizes the master validation report as irrelevant to the testing in this case because it was created by a different laboratory and "[t]here is no assurance that the Nashville [DEA] laboratory can perform the same method and get the same results" [*Id*. at 2].[6] The Court finds that Defendant and his expert have demonstrated their ability to evaluate the master validation report without access to all of the underlying data upon which the report is based [*See* Doc. 526 pp. 3–4; Doc. 526-3 pp. 2–6; Doc. 545 pp. 4–8]. Accordingly, Defendant's request to compel production of the complete underlying data along with his requests for the Court to review the data in camera or to preserve a sealed copy of the data for a future appeal [*See* Doc. 526 p. 6] are denied.

## IV. CONCLUSION

After careful consideration of the parties' arguments and the relevant law, the undersigned finds no basis to exclude the Government's master validation report, nor to compel the production of the undisclosed underlying validation data. Accordingly, the Court **ORDERS** as follows:

(1) Defendant's Renewed Motion to Exclude All Evidence Not Turned Over by Deadline or Alternatively to Compel Turnover of the THCSCRN Method Validation Data [Doc. 526] is **DENIED**.

(2) Defendant's alternative requests for the Court to review the validation data in camera or to require the Government to provide a sealed copy of the validation data for any future appeal are also **DENIED**.

---

[6] AUSA Davidson avers that the Government disclosed the 2022 validation report from the Nashville DEA laboratory on January 29, 2024 [Doc. 447 pp. 1–2]. This is consistent with Mr. Randa's testimony that after the Virginia DEA laboratory validated the testing procedure, each of the DEA laboratories performed method verifications or "a mini validation" to demonstrate that it could obtain a similar result on its instruments using the same parameters [Doc. 542 p. 158].

15

(3) Defendant may file a post-hearing brief limited to the effect of the master validation report on his argument that the test employed by Mr. Randa to identify the substances seized from his residence is not reliable. Defendant's post-hearing brief, if any, is due on or before **September 23, 2024**. The Government may file a responding brief on or before **September 30, 2024**. A reply brief is not necessary and may not be filed without leave.

(4) The parties shall strictly observe this briefing schedule, and no extensions of deadlines will be granted absent extraordinary circumstances.

**IT IS SO ORDERED**.

ENTER:

*Jill E. McCook*
Jill E. McCook
United States Magistrate Judge